**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JOHN DOE** | **CASE NO. 1:26-CV-02680 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Petition for Writ of Habeas Corpus ("Habeas Corpus") filed by Petitioner, John Doe ("Petitioner") [Doc. No. 1]. Respondents, Brian Acuna, Markwayne Mullin, and Todd Blanche, in their official capacities (collectively, "Respondents"), filed a response [Doc. No. 27]. Petitioner filed a reply [Doc. No. 28]. Also before the Court is a Motion for Release Pending Adjudication [Doc. No. 19] filed by Petitioner. Respondents filed a response [Doc. No. 25], and Petitioner filed a reply. [Doc. No. 26].

After careful consideration of the parties' filings and applicable law, the Habeas Petition [Doc. No. 1] is **DENIED** and **DISMISSED WITHOUT PREJUDICE**. The Motion for Release Pending Adjudication [Doc. No. 19] is **DENIED AS MOOT**.

## I. Introduction

Petitioner, a citizen of Kuwait, lawfully entered the United States on or about August 2014 on a valid F-1 nonimmigrant visitor visa.[1] Thereafter, Petitioner

[1] [Doc. No. 27, p. 27]; [Doc. No. 1, ¶ 12].

adjusted his immigration status in November 2024 to that of Conditional Lawful Permanent Resident ("CLPR") of the United States.[2]

On July 3, 2026, Petitioner was detained in Brooklyn, New York by the Department of Homeland Security ("DHS").[3] He was arrested under § 237(a)(4)(C)(i) of the Immigration and Nationality Act ("INA") and subsequently transferred to the Central Louisiana Processing Center in Jena, Louisiana, where he is currently detained.[4] Removal proceedings are pending in the LaSalle Immigration Court in Jena, Louisiana. Petitioner was issued a Notice to Appear[5] and is not subject to a final order of removal.[6]

Petitioner filed a Habeas Corpus petition in this Court pursuant to 28 U.S.C. § 2241.[7] He has also filed a Motion for Release Pending Adjudication of the petition, citing the Court's inherent authority to release habeas petitioners on bail.[8] Respondents oppose the motion, arguing, in pertinent part, that this Court lacks jurisdiction to adjudicate the claim.[9] For the reasons explained below, the Court finds that 8 U.S.C. § 1252(g) divests this Court of jurisdiction to assess Petitioner's First Amendment and substantive due process claims. This Court further finds against the Petitioner on his remaining procedural due process claim.

The issues have been briefed and the Court is prepared to rule.

---

[2] [Doc. No. 27, p. 1].
[3] [Doc. No. 1, ¶ 21].
[4] [Id. at ¶ 16].
[5] [Id. at ¶ 24].
[6] [Id. at ¶ 43].
[7] [Id. at ¶ 10].
[8] [Doc. No. 21, p. 1].
[9] [Doc. No. 27, p. 2].

## II. Law and Analysis

### A. Writ of Habeas Corpus Standard

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). "It is well established"' that these protections also apply to aliens. *See Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Congress authorizes district courts to grant "writs of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). For the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Petitioner brings three constitutional challenges to his arrest and detainment: (1) a retaliation claim under the First Amendment, (2) a substantive due process challenge under the Fifth Amendment, and (3) a procedural due process challenge under the Fifth Amendment. This Court will address each claim in turn.

### B. Jurisdiction

We begin, as we must, with the jurisdictional questions posed by this case. *See Ex parte McCardle*, 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it

ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). As an initial matter, Congress granted federal district courts jurisdiction over habeas petitions. 28 U.S.C. § 2241(a). This threshold jurisdictional determination presents a second question: Does anything strip this Court of subject matter jurisdiction?

As with many other areas of law, Congress, seeking to manage sparse Article III judicial resources and capture the benefits of expertise, created an administrative process to review immigration cases. In the immigration context, cases initially go to immigration judges, 8 C.F.R. § 1003.10, before the issues are consolidated for review by a federal court of appeals. *See* 8 U.S.C. § 1252(a)(5). This general statutory schema mirrors administrative adjudication in many contexts including in the SEC, the FTC, the EPA, the FDA, and the FCC. 2 Charles H. Koch & Richard Murphy, Admin. L. & Prac. § 5:10 (3d ed. 2024).

To ensure its proper functioning, Congress, in at least three places, stripped jurisdiction from federal district courts to hear collateral attacks on ongoing immigration removal proceedings: 8 U.S.C. § 1252(a)(5), § 1252(b)(9), and § 1252(g). Congress's authority to define the jurisdiction of federal courts—particularly lower federal courts—is well established in American jurisprudence. *See e.g.*, *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the [inferior] courts, must define their respective jurisdictions."). Courts have an obligation to continually assess their ability to hear cases and must not hear cases when Congress has not given them authority or, perhaps more importantly, has explicitly removed

their authority to hear that particular case or controversy. *Arbaugh v. Y&H Corp.* 546 U.S. 500, 506-07 (2006). This Court will assess the jurisdictional viability of Petitioner's First Amendment and substantive due process claims, before assessing his procedural due process claim.

**1. First Amendment Retaliation and Substantive Due Process Claims**

At its core, jurisdiction emerges from the bedrock principle of the separation of powers. As Justice Scalia explained, "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). "[I]t carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94. The separation of powers concerns are heightened—perhaps at their zenith—when a case involves immigration or foreign affairs. This case involves both.

The Petitioner, who is currently in removal proceedings, was detained under 8 U.S.C. § 1227(a)(4)(C)(i). This provision states: "An alien whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is deportable." 8 U.S.C. § 1227(a)(4)(C)(i). Secretary of State Marco Rubio made a personal determination that Petitioner's continued presence in the United States "would have potentially serious adverse foreign policy consequences for the United

States."[10] *Id.* The power of the political branches over matters related to immigration and foreign policy is near plenary.[11]

It is against this backdrop that Petitioner contends this Court has the authority to rule on a discretionary decision made by the Secretary of State over a matter related to *both* immigration and foreign policy. This Court declines such a dramatic overreach into the heart of Executive authority. Not only would an exercise of jurisdiction necessarily involve questioning the political discretion of the Executive—something this Court has neither the expertise nor the power to do—but it would disrupt the statutory scheme established by Congress in the INA to efficiently adjudicate immigration claims. This Court will not usurp the powers entrusted to the other branches.[12]

While these broad separation-of-powers principles undergird this Court's ruling, it is worth discussing in more concrete terms how Petitioner's claims necessarily encroach on the Executive's discretionary authority, in violation of the INA's jurisdiction-stripping provisions.

Title 8 U.S.C. § 1252(g) restricts judicial review of the Attorney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). In *Reno v. American-Arab Anti-Discrimination Committee* (*AADC*), the Supreme Court rejected the

---

[10] [Doc. No. 21, p. 11].
[11] *See* Patrick J. Charles, *The Plenary Power Doctrine and the Constitutionality of Ideological Exclusions: An Historical Perspective*, 15 TEX. REV. L. & POL. 61, 63 n.1 (2010) (collecting cases).
[12] Immigration & Nationality Act, Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended in scattered sections of 8 U.S.C.).

government's contention that § 1252(g) "covers the universe of deportation claims." 525 U.S. 471, 482 (1999). Rather, it "is much narrower," stripping district court jurisdiction from the three discrete discretionary decisions (i.e., the decision to *commence* proceedings, *adjudicate* cases, and *execute* removal orders) belonging to the Executive Branch. *Id.* Respondents are correct to note that § 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether and when to commence removal proceedings. This raises the operative question: Is Petitioner challenging the decision to commence the removal proceeding against him?

The answer, with respect to Petitioner's First Amendment and substantive due process claims, is yes. Petitioner argues that he should be released because "the government has imprisoned him to suppress his political speech."[13] As part of his First Amendment retaliation claim, Petitioner urges this Court to declare the Secretary of State's actions were "substantially motivated against [the Petitioner's] exercise of constitutionally protected conduct."[14] This claim is "inextricably linked" to the Attorney General's "decision" to "commence proceedings" against Petitioner. *Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026).

Similarly, Petitioner argues that Respondents violated his substantive due process rights because his detention "lacks any legitimate governmental purpose" because the Secretary of State's "sole purpose" in detaining him was "to punish protected political speech and carry out political retribution."[15] This is, in effect, a call

---

[13] [Doc. No. 26, p. 1].
[14] [Doc. No. 21, p. 5]; Alexander v. City of Round Rock, 854 F.3d 298, 308 (5th Cir. 2017).
[15] [Doc. No. 21, p. 11].

for the Court to opine on the nature and validity of the Secretary of State's motivations for an action taken to protect the foreign affairs of the United States. This Court cannot disentangle the merits of Petitioner's substantive due process claim from an inquiry into the Secretary of State's decision to "commence proceedings" against Petitioner. As such, § 1252(g) squarely applies, divesting this Court of authority to hear Petitioner's substantive due process claim.

Petitioner seeks to avoid the jurisdiction-stripping provisions of the INA by fashioning his claim as one merely challenging his detention. However, such a stark contrast between detention and removal is foreclosed by Supreme Court precedent. *See Demore v. Kim*, 538 U.S. 510, 523 (2003); *Carlson v. Landon*, 342 U.S. 524, 538 (1952). Whether the government targeted Petitioner for his political speech or unlawfully deprived him of his liberty interest necessarily requires the Court to scrutinize the adequacy of the Secretary of State's determination—the very thing that § 1252(g) forbids. *See*, *AADC*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."). Unlike, for instance, challenges to a detainee's condition of confinement, the Petitioner's First Amendment and substantive due process claims are not collateral to the government's discretionary decision to commence removal proceedings against him.

Petitioner insists that his "immigration proceedings would proceed unaffected."[16] This Court disagrees. Addressing his First Amendment and

[16] [Doc. No. 28, p. 3].

substantive due process claims would require deciding whether removing Petitioner would be unlawful—the very issue decided through the petition for review process established in § 1252. If this Court found that Petitioner's First Amendment and substantive due process claims were meritorious, then he "could bring that claim right away on habeas (because illegal detention cannot be remedied later)." *Khalil v. President, United States*, 164 F.4th 259, 275 (3d Cir. 2026). Then, "[w]ith a final judgment in hand, [he] could use issue preclusion or law of the case in the later PFR, leaving that court with nothing to decide." *Id.* This is exactly the type of piecemeal litigation that § 1252 seeks to prevent.

Petitioner further argues that if § 1252's jurisdiction-stripping provisions apply, it would "render all detention claims effectively unreviewable."[17] The Third Circuit ably responded to this argument:

> Our legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments. Consider an innocent defendant who was convicted of a serious crime and imprisoned because his trial lawyer was ineffective. His detention is wrongful: He did not actually commit the crime. But that does not entitle him to seek immediate release through habeas; first, he must exhaust his direct appeal. That delay does not foreclose meaningful review. It just streamlines the process for seeking it. Congress has the power to balance concerns about the orderly adjudication of claims with concerns about remedying harms for illegal detention.

*Id.* at 275–76 (cleaned up). The arguments proffered by Petitioner will be reviewed by the court of appeals in his PFR. *See* 8 U.S.C. § 1252(a)(5). Moreover, this is the system that Congress established to process immigration claims. It is the Court's job

[17] [*Id.* at 8] (cleaned up).

to apply the law to the case at hand and, when the law divests district courts of subject-matter jurisdiction, this Court must forbear.

**2. Procedural Due Process**

**i. Section 1252(g)**

Earlier this Court held that Petitioner's First Amendment retaliation claim and substantive due process claim were inextricably intertwined with the Secretary's decision to commence removal proceedings against Petitioner. To assess whether the government impermissibly infringed on Petitioner's liberty interest or commenced proceedings against him to chill his speech requires consideration of the Secretary's decision to commence removal proceedings. These are precisely the disputes that are channeled to the court of appeals in the petition for review. Section 1252(g)'s attempt to limit federal court intrusion on this prosecutorial discretion clearly divests this Court of jurisdiction to hear those claims.

However, the same is not true for Petitioner's procedural due process claim—his only detention-specific claim. Unlike the previous claims, to assess whether the Petitioner has been given constitutionally adequate process does not necessarily require the sort of interbranch scrutiny that resolution of the previous claims presents.

As noted above, the Supreme Court construed § 1252(g) narrowly in *AADC*. This construal was affirmed by a plurality in a subsequent case interpreting § 1252(b)(9), which stated, *AADC* "did not interpret [§ 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the

Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality). Thus, the question is whether Petitioner's procedural due process claim arises from a decision to "commence proceedings, adjudicate cases, or execute [his] removal orders." 8 U.S.C. § 1252(g).

Consider the three actions included in § 1252(g). Whether Petitioner was entitled to a hearing before his detainment is wholly collateral to the decision to detain him. Moreover, the procedural due process claims cannot be said to arise from the decision to adjudicate his removal case since it does not implicate the Executive's discretion to continue or withdraw such a proceeding. Finally, Petitioner does not yet have a final order of removal, so his claim cannot arise from the execution of one. Therefore, Petitioner's procedural due process claim alone escapes the jurisdiction-stripping effect of § 1252(g).

**ii. Sections 1252(a)(5) and 1252(b)(9)**

"8 U.S.C. § 1252(a)(5) and § 1252(b)(9) are zipper clauses that aim to funnel judicial review of final deportation orders and questions of law or fact arising from deportation proceedings into a single mechanism—a petition for review of the BIA's decision filed in the appropriate court of appeals." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022) (cleaned up).

To prevent disruption of deportation proceedings by district courts, the zipper clauses consolidate review into one petition for review (PFR) before a court of appeals. § 1252 prevents district courts from considering claims that are channeled into the PFR. It does not, however, bar claims that do not fit within the process. *See Aguilar*

*v. ICE*, 510 F.3d 1, 10–11 (1st Cir. 2007). Judicial review is not precluded if there is no way for petitioners to obtain review of a decision by following the procedure prescribed in § 1252(b)(9). So when petitioners raise claims that can be reviewed as part of the statutory scheme—before an immigration judge, the BIA, or in a PFR to a court of appeals—§ 1252 strips jurisdiction from district courts to hear these prematurely-brought claims. But when petitioners raise claims that cannot be meaningfully reviewed through the PFR process, then those claims cannot be said to "arise from the actions taken or the proceedings brought to remove them" under § 1252(b)(9).

Section 1252(b)(9) channels judicial review of all questions of law and fact arising from any action taken or proceeding brought to remove an alien into a PFR of a final order. But the Supreme Court has held that this language cannot be read according to its broadest possible sweep. The Court cautioned against "uncritical literalism" in rejecting an interpretation of "arising from" that swept in any cause or claim that has some connection to removal proceedings. *Jennings*, 583 U.S. at 293. Instead, the Court, drawing on its interpretation of similarly "capacious phrases," gave it a limiting construction: a claim can be said to "aris[e] from" removal action only when the claim itself requires adjudicating a question that the removal proceeding—and, eventually, PFR review of it—will actually resolve it. *Id.* at 293–94.

Petitioner's procedural due process claims ask the court to answer the following question: Has the Petitioner received constitutionally adequate process for the fact and duration of his physical confinement? This is a purely collateral question

that can be resolved without reference to the underlying removability determination. Unlike Petitioner's First Amendment Retaliation and substantive due process claim, the claim not inextricably linked to the Executive Branch's discretionary decision to remove Petitioner from the country. Consequently, it escapes the jurisdictional bar imposed by § 1252(b)(9).

While § 1252(b)(9) *may* apply to cases without an order of removal, by its plain terms, § 1252(a)(5) applies only to cases with an order of removal. Critical to Justice Thomas's argument in *Jennings* that § 1252(b)(9) applies to cases without a final order of removal is the disjunctive "or" in the phrase "to review such an order or *such questions of law or fact*." *See Jennings*, 583 U.S. at 320 (Thomas, J., concurring). § 1252(a)(5) simply provides that a PFR "shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Since there is no final order of removal, it does not divest this Court of jurisdiction to consider Petitioner's detention-specific procedural due process claim.

**C. Procedural Due Process**

Regarding the merits of Petitioner's procedural due process arguments, Petitioner maintains that he was entitled to notice and a hearing before he was detained.[18] To support these contentions, Petitioner relies on cases outside of the 8 U.S.C. § 1227(a)(4)(C)(i) context. While understandable given its rare use, the unique factors that comprise this statutory provision make it altogether different. Most significantly, Petitioner's arrest did not arise from ordinary, field-level immigration

[18] [Doc. No. 21, pp. 8–10].

enforcement; rather, his detention flowed from a personal, non-delegable certification by the Secretary of State that his presence posed "potentially serious adverse foreign policy consequences" for the United States. *Id.* The *Mathews* framework, properly applied in this unique statutory context, supports the opposite conclusion Petitioner urges. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

> administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

While Petitioner's procedural due process claim escaped the INA's jurisdiction-stripping provisions, the underlying separation-of-powers concerns still remain. It is well established that "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government," and that this authority is "largely immune from judicial inquiry or interference." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). Where the Executive Branch's stated basis for an immigration action is a foreign policy judgement—not a factual dispute about criminal conduct or a flight risk that a court is well-suited to test—courts are uniquely ill-equipped to balance the competing interests of the parties. Indeed, a procedural due process rule that would require the government to provide a pre-deprivation hearing to defend the soundness of a Cabinet Secretary's foreign policy judgment is at tension with the historic deference the government has always received in matters related to foreign affairs and immigration.

Applied here, the *Mathew*s test does not support the Petitioner's procedural due process claim. The first factor clearly weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Residing in the United States for approximately twelve years, Petitioner established a liberty interest. *See Diaz*, 426 U.S. at 77 (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not).

The second prong, the risk of erroneous deprivation, is less pronounced here than in ordinary immigration detention cases because the statute requires—and the Petitioner received—a personal determination by the Secretary of State applying a "reasonable ground to believe" standard. As such, the risk that Petitioner is wrongfully detained is significantly decreased by this personalized determination. In other words, Petitioner has already received an individualized, high-level assessment of whether he should be subject to deportation proceedings.

The third *Mathews* prong—the government's interest—is substantial. Advance notice that the government intends to detain and remove an individual on foreign policy grounds would invite the very harm that detention is meant to forestall—namely, continued conduct that the Secretary of State determines to be a serious risk to the United States, opportunity to coordinate with foreign contacts, or flight before the government can act. Finally, Petitioner is not left without recourse; he retains the right to a hearing before an Immigration Judge, a right to appeal to the BIA, and the right for a court of appeals to hear his claims in his PFR. This robust review process provides the "meaningful opportunity" to be heard required by the Due Process

Clause. *Mathews*, 424 U.S. at 349. Accordingly, Respondents have not violated Petitioner's right to procedural due process.

To the extent that Petitioner makes a Fifth Amendment procedural due process claim on the basis of First Amendment retaliation, this Court has no jurisdiction. Petitioner's reply brief couches his procedural due process argument in First Amendment retaliation language.[19] This line of argument requires this Court to make a threshold determination that "Petitioner was detained in retaliation for his First Amendment speech."[20] This argument is not cognizable for the same reasons that Petitioner's freestanding First Amendment retaliation claim fails: Such a determination necessarily involves inquiry into the Executive branch's discretion to "commence proceedings" bringing it within § 1252(g). It shifts a cognizable detention-specific claim into one that challenges Petitioner's removal.

## III. Conclusion

For the reasons stated above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Petitioner's Habeas Petition [Doc. No. 1] is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Release Pending Adjudication [Doc. No. 19] is **DENIED AS MOOT**.

[19] [Doc. No. 28, p. 10].
[20] [Id.].

MONROE, LOUISIANA, this 25th day of September 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE